Case No. 10-15152

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Before the En Banc Panel
(Opinion filed February 23, 2012)

ELIZABETH AIDA HASKELL, REGINALD ENTO, JEFFREY PATRICK LYONS, JR., and AAKASH DESAI, on behalf of themselves and others similarly situated,

*Plaintiffs-Appellants*,

v.

KAMALA D. HARRIS, Attorney General of California; EVA STEINBERGER, Assistant Bureau Chief for DNA Programs, California Department of Justice,

*Defendants-Appellees*.

## PLAINTIFFS-APPELLANTS' SUPPLEMENTAL BRIEF
## RE: *MARYLAND V. KING*

On Appeal from the United States District Court
for the Northern District of California
The Honorable Charles R. Breyer
Case No. C 09-04779 CRB

Peter C. Meier
PAUL HASTINGS LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA  94105
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Michael T. Risher
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Plaintiffs-Appellants
ELIZABETH AIDA HASKELL, REGINALD ENTO, JEFFREY PATRICK LYONS, JR., and AAKASH DESAI, on behalf of themselves and others similarly situated

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

DISCUSSION .......................................................................................................3

    1.    California takes DNA from persons arrested for much less serious crimes......................................................................3

    2.    California takes and retains DNA from people never charged with a crime ................................................................4

    3.    Unlike Maryland, California takes and analyzes DNA without any judicial oversight......................................................5

    4.    In combination, the main aspects of the Maryland law that distinguish it from the California law approach what is required for a search warrant for DNA ..................................9

CONCLUSION ...................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*County of Riverside v. McLaughlin*,
  500 U.S. 44 (1991) ..................................................................................... 7

*Dant v. Superior Court*,
  61 Cal. App. 4th 380 (1998) ....................................................................... 5

*Friedman v. Boucher*,
  580 F.3d 847 (9th Cir. 2009) ...................................................................... 8

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ........................................................................... 5, 7, 10

*Green v. Nelson*,
  595 F.3d 1245 (11th Cir. 2010) .................................................................. 9

*Haskell v. Harris*,
  669 F.3d 1049 (9th Cir. 2012) .................................................................... 6

*Illinois v. Gates*,
  462 U.S. 213 (1983) .................................................................................... 9

*Johnson v. United States*,
  333 U.S. 10 (1948) ...................................................................................... 7

*Maryland v. King*,
  133 S. Ct. 1 (2012) ...................................................................................... 3

*Maryland v. King*,
  133 S. Ct. 1958 (2013) ........................................................................ passim

*Missouri v. McNeely*,
  133 S. Ct. 1552 (2013) ................................................................................ 7

*Payton v. New York*,
  445 U.S. 573 (1980) ............................................................................... 7, 10

*People v. Buza*,
  129 Cal. Rptr. 3d 753 (Cal. App. 2011) ..................................................... 6

*People v. Powell*,
   67 Cal. 2d 32 (1967) ................................................................................. 5

*People v. Towne*,
   44 Cal. 4th 63 (2008) ............................................................................... 3

*United States v. Angulo-Lopez*,
   791 F.2d 1394 (9th Cir. 1986) ................................................................. 9

*United States v. Pool*,
   621 F.3d 1213 (9th Cir. 2010) ................................................................. 8

*United States v. Ventresca*,
   380 U.S. 102 (1965) ................................................................................ 7

**STATUTES**

Cal. Penal Code
   § 296(a)(2)(C) .......................................................................................... 1
   § 487(b) ................................................................................................... 3
   § 489 ........................................................................................................ 3
   § 570 ........................................................................................................ 3

**OTHER AUTHORITIES**

Cal. Dep't of Justice, Crime in California 2011, at 50 (Table 38A,
   Dispositions of Adult Felony Arrests 2006-2011), *available at*
   http://oag.ca.gov/sites/all/files/pdfs/cjsc/publications/candd/
   cd11/cd11.pdf .......................................................................................... 4

California Criminal Law Procedure and Practice § 6.9, at 134 (Cal. C.E.B.
   2012 ed.) ................................................................................................. 6

U.S. Const. Amend. IV ................................................................................ passim

## INTRODUCTION

All parties acknowledge that *Maryland v. King*, 133 S. Ct. 1958 (2013), is new law, and an important precedent this Court must consider in evaluating this appeal. The State has already suggested *King* controls. It does not. If anything, *King*'s analysis confirms that California's broad law would not fit within the *King* Court's tolerance of a limited law focused on certain, enumerated and serious felonies.

*King* examined the reasonableness of and upheld as constitutional a Maryland law that differs significantly from the California statute now before this Court. Four aspects of California Penal Code § 296(a)(2)(C) distinguish it from that more-limited Maryland law:

1.  The Maryland law applies only to a small set of very serious felonies in which DNA evidence is likely to be relevant; California's law applies to all felonies, including more minor crimes in which DNA evidence will rarely if ever be relevant, such as joyriding.

2.  The Maryland law applies only to individuals who the state charges with crimes and who therefore will be prosecuted and either held in custody or subject to a later need for identification; California's law applies even to those persons who the state never charges, and who will have no further involvement with the criminal-justice system.

3. The Maryland law prohibits the police from analyzing or otherwise using a DNA sample unless and until a judge determines that there is probable cause to believe that the suspect has committee a serious felony; California law allows the police to indefinitely retain, analyze, and use DNA samples without a judicial finding of probable cause.

4. Maryland automatically expunges samples and profiles of every person it fails to convict; California retains and uses samples indefinitely even if a person is never charged with or convicted of anything.

Because the *judicial* finding that a defendant has committed a crime is the "watershed event" that allows the government to take and analyze a DNA sample without a warrant, California's failure to require such a finding fundamentally differentiates this case from *King*. And because Maryland only takes DNA from defendants charged with serious crimes in which DNA is likely to be relevant, Maryland's required judicial finding that there is probable cause to believe that the defendant has committed the crime also serves as a finding that searching his DNA may uncover evidence of that offense. This approaches the standard and procedure for issuing a search warrant.

Thus, although *King* may validate state DNA collection laws that guaranty judicial involvement akin to the warrant process, it does not endorse the California law at issue here, which lacks those protections.

## DISCUSSION

### 1. California takes DNA from persons arrested for much less serious crimes.

As *King* repeatedly emphasizes, Maryland only takes DNA samples from persons arrested and charged with a small number of very "serious" crimes, such as "murder, rape, first-degree assault, kidnaping, arson, [and] sexual assault." *See King*, 133 S. Ct. at 1967. In contrast, California's law applies to *all* felonies, including simple drug possession, joyriding, unlawfully subleasing a car, or taking $250 worth of nuts from an orchard. *See* Cal. Penal Code §§ 487(b), 489, 570; *People v. Towne*, 44 Cal. 4th 63 (2008) ("felony joyriding"); Appellants' Opening Br., Dkt. 5, at 13-14. Many of these offenses are "wobblers," meaning that although they support a felony arrest with mandatory DNA collection, they often will result at most in misdemeanor charges. *See* ER0180-81.

This difference is significant both because the government has a greater interest in solving serious crimes than it does in solving less-serious ones and because DNA evidence is likely to be useful to solve the types of serious crimes covered by the Maryland law. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) ("Crimes for which DNA evidence is implicated tend

-3-

to be serious, and serious crimes cause serious injuries."). Neither of these considerations applies for most of the hundreds of offenses covered by California's law.[1]

### 2. California takes and retains DNA from people never charged with a crime.

In Maryland, DNA is taken only from people "***charged with***" one of the specified crimes, not from those merely arrested. *King*, 133 S. Ct. at 1967 (emphasis added). But California takes DNA from people who are arrested but never charged with a crime, and then retains, analyzes, and uploads those samples to CODIS. This difference, which implicates the rights of tens of thousands of Californians every year,[2] is significant for two reasons.

First, a prosecuting attorney's review may exonerate individuals who were arrested for lawful conduct based on a police officer's misunderstanding of the

---

[1] Plaintiffs challenge the statute both facially and as-applied, requesting injunctive and declaratory relief on behalf of a class comprising everybody affected by the law. *See* Appellants' Opening Br., Dkt. 5 at 6-7; ER0737, 0749-0753. Therefore, they are entitled to relief against unconstitutional applications of the statute, even if the statute could properly apply to arrestees charged with more serious crimes.

[2] In 2011, 55,768 (19%) of the 292,231 individuals arrested on suspicion of a felony in California were never charged with a crime. *See* Cal. Dep't of Justice, Crime in California 2011, at 50 (Table 38A, Dispositions of Adult Felony Arrests 2006-2011), *available at* http://oag.ca.gov/sites/all/files/pdfs/cjsc/publications/candd/cd11/cd11.pdf. The police released 9,780 (3.3%) of these individuals without referral for prosecution; prosecutors declined to charge an additional 45,988 (15.7%) of them. *Id.* The record contains similar statistics from prior years. *See* ER0157.

-4-

law. Although prosecutorial review is no substitute for review by a neutral magistrate, it nevertheless "affords a measure of protection against unfounded" charges. *Gerstein v. Pugh*, 420 U.S. 103, 117 (1975).

Second, the governmental interests that support Maryland's law, such as the need to make bail determinations, jail classifications, and charging decisions, simply do not apply to individuals who are released without being prosecuted. *See King*, 133 S. Ct. at 1970-75. In California, arrestees must normally be charged and arraigned within 48 hours of arrest, excluding weekends and holidays. *See People v. Powell*, 67 Cal. 2d 32, 58-59 (1967); *Dant v. Superior Court*, 61 Cal. App. 4th 380, 386-87, 890 (1998). Individuals who are ultimately not charged with an offense are therefore automatically and unconditionally released long before any test results could be available. For example, just three days after Appellant Haskell's arrest, the San Francisco District Attorney's Office notified the Superior Court that it was not charging her with any offense. *See* ER0245, 0249. The same concerns that animated *King* simply do not apply to everyone who falls within the California law.

### 3. Unlike Maryland, California takes and analyzes DNA without any judicial oversight.

Under Maryland law, a "DNA sample may not be processed or placed in a database before the individual is arraigned. It is at this point that a judicial officer ensures that there is probable cause to detain the arrestee on a qualifying serious

-5-

offense." *King*, 133 S. Ct. at 1967. If the arrestee is not taken before a magistrate, or if the magistrate determines that there is no probable cause, the sample is immediately destroyed. *See id.* at 5.

In California, by contrast, the police seize, search, upload, and retain DNA samples from every person that they arrest, including those who are never taken before a magistrate for a probable-cause determination.[3] *See Haskell v. Harris*, 669 F.3d 1049, 1066-67, *vacated*, 686 F.3d 1121 (9th Cir. 2012) (Fletcher, J., dissenting). Moreover, "[e]ven if the arrest is subsequently determined by a judicial officer to have been without sufficient cause, the DNA sample will have been taken and a profile developed, and the use of the profile and preservation of the sample will continue unless and until the arrestee succeeds in the cumbersome process of having them expunged." *People v. Buza*, 129 Cal. Rptr. 3d 753, 780 (Cal. App. 2011), *review granted*, 132 Cal. Rptr. 3d 616 (Cal. 2011); *see also Haskell*, 669 F.3d at 1067-69 (Fletcher, J., dissenting).

This difference means that the Maryland statute, but not the California law, comports with the fundamental Fourth Amendment principle that "[w]hen the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

---

[3] Because California courts typically combine arraignment with the probable-cause hearing, most of the people arrested but not charged in California every year never receive a probable-cause hearing. California Criminal Law Procedure and Practice § 6.9, at 134 (Cal. C.E.B. 2012 ed.).

*Johnson v. United States*, 333 U.S. 10, 14 (1948); *accord Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). A neutral magistrate's involvement is often all that separates a constitutional search from one that violates the Fourth Amendment.[4] *See United States v. Ventresca,* 380 U.S. 102, 105-07 (1965). This constitutional preference for judicial involvement also means that, although "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest," the government must obtain a ***judicial*** finding of probable cause in order to detain a suspect for more than 48 hours. *Gerstein*, 420 U.S. at 113-14; *see County of Riverside v. McLaughlin*, 500 U.S. 44, 53, 57 (1991) (48 hours).

The DNA-collection scheme upheld in *King* tracks this same constitutionally mandated pattern. It allows the police to arrest a person and take the administrative step of seizing a DNA sample with no judicial involvement, but then prohibits them from testing, using, or retaining that sample until and unless they obtain the judicial finding of probable cause required by *Gerstein.* It is that judicial finding that allows them to retain and use the sample, just as a judicial

---

[4] For example, a magistrate's finding of probable cause to believe that a suspect has committed a felony is both necessary and sufficient to authorize entry of the suspect's home to arrest him, even though it is not based on probable cause to believe he will be present. *See Payton v. New York*, 445 U.S. 573, 602-03 (1980).

-7-

finding of probable cause authorizes the government to hold a suspect in custody so it can prosecute him.

This analysis is consistent with this Court's pre-*King* precedent that the magistrate's finding of probable cause to detain a person for trial is the "watershed event" that allowed the government to seize and search his DNA. *United States v. Pool*, 621 F.3d 1213, 1215, 1228 (9th Cir. 2010), *vacated*, 646 F.3d 659, *dismissed as moot*, 659 F.3d 761 (9th Cir. 2011). This judicial involvement is what distinguished *Pool* from binding precedent that had held that DNA testing of an arrestee violated the Fourth Amendment, *Friedman v. Boucher*, 580 F.3d 847 (9th Cir. 2009). *See Pool*, 621 F.3d at 1224 ("unlike the situation in *Friedman*, there has been a judicial determination of probable cause to believe that Pool committed a federal felony"). As *Pool* makes clear, the fact the government can take and use a DNA sample after a magistrate has found probable cause to hold a defendant does not mean that it can take a DNA sample from "mere arrestees" who have not been before a magistrate or who have been discharged by the magistrate for lack of probable cause. *Id*. at 1231 (Lucero, J., concurring) ("[T]his case condones DNA testing for individuals for whom a judicial or grand jury probable cause determination has been made; it does not address such sampling from mere arrestees. That distinction is highly significant.").

**4. In combination, the main aspects of the Maryland law that distinguish it from the California law approach what is required for a search warrant for DNA.**

Maryland's requirement that a neutral magistrate find probable cause to believe that the defendant has committed a serious crime where DNA evidence is likely to be relevant approaches the substantive and procedural requirements for issuing a search warrant to obtain and analyze a DNA sample. With some crimes, the nature of the offense alone can provide probable cause to believe that certain searches will uncover probative evidence. *See United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986). Because Maryland's law applies only to offenses in which DNA evidence will likely be relevant, if there is probable cause to believe that a defendant has committed one of Maryland's qualifying offenses then there is also a "fair probability" that searching the defendant's DNA will uncover evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *see Green v. Nelson*, 595 F.3d 1245, 1252 (11th Cir. 2010) (rape victim's identification of suspect is in itself probable cause to obtain a warrant to seize and search his DNA). A magistrate's finding of probable cause thus may serve to authorize such a search as well as continued detention. But this reasoning should not be expanded to mean that California, without a judicial finding of probable cause, can search DNA samples for a much broader range of crimes. *See King,* 133 S. Ct. at 1980 (holding that DNA collection is reasonable "[w]hen officers make an arrest *supported by*

-9-

*probable cause* to hold for a *serious offense*" (emphasis added)); *id.* at 1978 ("In considering those expectations in certain cases, however, the necessary predicate of a valid arrest for a serious offense is fundamental.").

## CONCLUSION

*King* held that Maryland's statute strikes a reasonable balance between governmental interests and individual rights and therefore is constitutional. *King*, 133 S. Ct. at 1980. But that statute is much more narrowly tailored to the government's interests and is much more protective of privacy than is California's. Although Maryland's statutory scheme for taking and analyzing DNA from arrestees "may afford less protection than a search warrant," it preserves the core Fourth Amendment requirement of "interpose[ing] the magistrate's determination of probable cause between the zealous officer and the citizen." *Payton*, 445 U.S. at 602-03; *see Gerstein*, 420 U.S. at 112. It applies only to very serious crimes in which DNA evidence likely will be relevant. And because it applies only to people who actually are being prosecuted for these serious offenses, it serves important interests relating to the criminal-justice system.

California's DNA law lacks any judicial or even prosecutorial oversight. It applies much more broadly to people who are arrested for minor crimes in which DNA is rarely an issue and who are released soon after arrest without even being charged. And it lacks automatic expungement for innocent arrestees.

For these reasons, and those discussed in Plaintiffs' prior briefing, California's law violates the Fourth Amendment.

Respectfully submitted,

Dated: July 1, 2013                PAUL HASTINGS LLP


                                   By:  /s/ Peter C. Meier
                                        Peter C. Meier

Dated: July 1, 2013                AMERICAN CIVIL LIBERTIES UNION
                                   FOUNDATION OF NORTHERN
                                   CALIFORNIA, INC.


                                   By:  /s/ Michael T. Risher
                                        Michael T. Risher

                                   Attorneys for Plaintiffs-Appellants
                                   Elizabeth Aida Haskell, Reginald Ento, Jeffrey
                                   Patrick Lyons, Jr., and Aakash Desai, on behalf
                                   of themselves and others similarly situated

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C)(i) and Circuit Rule 32-1, the attached supplemental brief is proportionately spaced, has a typeface of 14 points or more and contains 2410 words, as determined by the word-count feature of the word processing system. In compliance with Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this number includes headings, footnotes, and quotations but not the caption, table of contents, table of citations, or certificate of counsel.

Dated:  July 1, 2013

/s/ Peter C. Meier
Peter C. Meier

-12-

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 1, 2013.

      I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                                         /s/ Doreen Bordessa
                                         DOREEN BORDESSA