10-15152

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ELIZABETH AIDA HASKELL, REGINALD ENTO, JEFFREY PATRICK LYONS, JR., and AAKASH DESAI, on behalf of themselves and others similarly situated,

          Plaintiffs and Appellants,

**v.**

KAMALA D. HARRIS, Attorney General of California; and EVA STEINBERGER, Assistant Bureau Chief for DNA Programs, California Department of Justice,

          Defendants and Appellees.

On Appeal from the United States District Court
for the Northern District of California
No. 09-cv-04779-CRB
The Honorable Charles R. Breyer, Judge

**APPELLEES' SUPPLEMENTAL BRIEF**

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
TAMAR PACHTER
Supervising Deputy Attorney General
ENID A. CAMPS
Deputy Attorney General

DANIEL J. POWELL
Deputy Attorney General
State Bar No. 230304
 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5830
Fax: (415) 703-1234
Email: Daniel.Powell@doj.ca.gov
*Attorneys for Appellees*

## TABLE OF CONTENTS

                                                               **Page**

Introduction .................................................................................... 1

Argument ........................................................................................ 1

    I.    The Supreme Court's decision in *King* governs this case ......... 1

    II.   None of the differences identified between Maryland and California law distinguish king from this case ........................ 4

        A.   *King* does not limit DNA collection to bookings incident to an arrest for a violent offense ..................... 5

        B.   *King* does not rely on judicial oversight ........................ 7

        C.   Differences in expungement procedures are not of constitutional dimension ................................................. 8

        D.   Appellants misapprehend the underpinnings of the decision in *King* .............................................................11

Conclusion .................................................................................... 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Bell v. Wolfish*
   441 U.S. 520 (1979)..................................................................................3

*Maryland v. King*
   133 S.Ct. 1958 (2013).........................................................................passim

*Maryland v. King*
   (2012) U.S Briefs 207. ............................................................................5

*Rise v. Oregon*
   59 F.3d 1556 (9th Cir. 1995)...................................................................9

*U.S. v. Other Medicine*
   596 F.3d 677 (9th Cir. 2010)...................................................................6

*United States v. Salerno*
   481 U.S. 739 (1987).................................................................................10

*Wyoming v. Houghton*
   526 U.S. 295 (1975).................................................................................1

**STATUTES**

42 U.S.C.
   § 14132(d)(1)...........................................................................................5
   § 14135a(a)(1)(A)....................................................................................5

Alaska Stat.
   § 44.41.035(b)(6).....................................................................................5

Ariz. Rev. Stat. Ann.
   § 13-610(K), (L) ......................................................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page**

California Penal Code
 § 295(g), (h)(1) ...................................................................................8
 § 296(a)(2)(c) ......................................................................................6
 § 299(b) ...............................................................................................8
 § 1203.018 ......................................................................................2, 3

Md. Pub. Saf. Code Ann.
 § 2-504(a)(3)(i) ...................................................................................7

Proposition 69 ..................................................................................10, 12

**CONSTITUTIONAL PROVISIONS**

United States Constitution
 Fourth Amendment ....................................................................passim

**OTHER AUTHORITIES**

28 C.F.R. 28.12(b) ....................................................................................5

Black's Law Dictionary at 650 (8th ed. 2004) (defining felony as "a serious crime, usually punishable by imprisonment for more than one year or by death.") ..........................................................................6

**INTRODUCTION**

In *Maryland v. King*, the United States Supreme Court held that collection of DNA identification samples at the time of arrest is constitutional under the Fourth Amendment. 133 S.Ct. 1958, 1980 (2013). Appellants identify several differences between the Maryland DNA collection law at issue in *King* and California law. These differences, however, are not constitutionally significant, and do not distinguish this case from *King*. Rather, *King* established a per se rule that collecting a DNA sample as part of the booking process is constitutional, and it resolves this case.

**ARGUMENT**

**I.     THE SUPREME COURT'S DECISION IN *KING* GOVERNS THIS CASE**

Like the district court below and the three-judge panel majority, the Supreme Court analyzed DNA collection at arrest under the totality of the circumstances, weighing "'legitimate governmental interests' against 'the degree to which [the search] intrudes upon an individual's privacy.'" *King*, 133 S.Ct. at 1970 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1975).) The Supreme Court concluded that states' legitimate interest "is well established: the need for law enforcement officers in a safe and accurate way to process and identify the persons and possessions they must take into

1

custody." *King*, 133 S.Ct. at 1970. The Court described the collection of a forensic DNA sample as "a routine administrative procedure[ ] at a police station house incident to booking and jailing the suspect." *Id*. at 1971. Including DNA sample collection during the booking process ensures the state knows who it has arrested. *Id*. The Court added that "[a] suspect's criminal history is a critical part of his identity," and that DNA is another form of identification, similar to a fingerprint, tattoo, or photograph. *Id*. at 1972 (using an arrestees' DNA profile to determine identity is "a different form of identification than a name or fingerprint, but its function is the same."). Like fingerprints, collection of a forensic DNA sample serves states' interests in identifying an arrestee, including other criminal acts that he may have committed, reducing risks to facility staff, existing detainee populations, and new detainees, and, assisting law enforcement officers in setting (or revoking) bail, and ensuring the arrestee presents himself at trial. *Id.* at 1972–74. In California, use of the state's DNA identification database to identify arrestees is particularly important in making assessments under criminal justice realignment, such as whether to release non-violent felony arrestees who are unable to make bail after 60 days. *See* Cal. Pen. Code § 1203.018.

2

Against these "substantial" interests, the Court weighed what it considered an arrestee's "minimal" interests. *Id*. at 1977. Because he has been taken into custody, an arrestee's expectation of privacy is "of a diminished scope." *Id*. at 1978 (quoting *Bell v. Wolfish*, 441 U.S. 520, 557 (1979)). Although it implicates the Fourth Amendment, the "brief intrusion of an arrestee's person" resulting from the collection of the DNA sample with a buccal swab is insignificant in the context of an arrest. *King*, 133 S.Ct. at 1979. Moreover, the restrictions governing DNA processing ensure that developing the DNA profile does not "intrude on [an arrestee's] privacy in a way that would make his DNA identification unconstitutional." *Id*.

After weighing the competing privacy interests the Court concluded:

> DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.

*Id*. at 1980. This holding is unequivocal and controls the outcome of this case.

3

## II. NONE OF THE DIFFERENCES IDENTIFIED BETWEEN MARYLAND AND CALIFORNIA LAW DISTINGUISH *KING* FROM THIS CASE

Appellants identify several differences between Maryland and California law, but none of them justify departing from *King*. The Court did not rely on any of these features of Maryland's law but instead issued a broad ruling authorizing the collection of a DNA identification sample during booking. *King*, 133 S.Ct. at 1980. In doing so, the Court stressed its reluctance "to circumscribe the authority of the police to conduct reasonable booking searches." *Id.* at 1974. Moreover, the Court acknowledged the variation in state laws that authorize DNA collection at arrest, California's in particular, and expressly declined to issue a decision limited to the Maryland law:

> Twenty-eight States and the Federal Government have adopted laws similar to the Maryland Act authorizing the collection of DNA from some or all arrestees. See Brief for State of California et al. as Amici Curiae 4, n. 1 (States Brief) (collecting state statutes). Although those statutes vary in their particulars, such as what charges require a DNA sample, *their similarity means that this case implicates more than the specific Maryland law. At issue is a standard, expanding technology already in widespread use throughout the Nation.*

4

*Id.* at 1968 (emphasis added).[1]

The Supreme Court thus recognized its holding goes beyond Maryland's law, and that other statutory "particulars" such as the ones appellants raise are inconsequential to the Fourth Amendment analysis.

### A. *King* Does Not Limit DNA Collection to Bookings Incident to an Arrest for a Violent Offense

Maryland's requirement that law enforcement officials collect a DNA identification sample from individuals arrested for enumerated "serious crimes," *id.* at 1967, is not significantly different from California's

---

[1] The ACLU, counsel for appellants, raised the same arguments in the Supreme Court as amicus curiae that appellant raises here, and condemned both California and federal law for their alleged overbreadth. The ACLU's arguments did not persuade the Supreme Court to narrow its ruling, which instead relied on California's amicus brief, filed on behalf of the 49 states not a party to the litigation. *See, e.g.*, *Maryland v. King*, 2012 U.S. Briefs 207, 2013 U.S. S.Ct. Briefs Lexis 751 (ACLU); 2013 U.S. S.Ct. Briefs Lexis 46 (California).

Similarly, appellants are incorrect to the extent they suggest that California's collection procedures make it an "outlier" among jurisdictions with arrestee DNA databases. Like California law, federal law provides for collection at arrest for all felonies prior to a judicial finding of probable cause, and relies on petitioner-initiated, rather than government-initiated, expungement. *See* 42 U.S.C. §§ 14132(d)(1), 14135a(a)(1)(A); 28 C.F.R. 28.12(b). Within this circuit, both Arizona and Alaska authorize arrestee sample collection prior to a judicial finding of probable cause and rely on petitioner-initiated expungement procedures. Alaska Stat. §44.41.035(b)(6); Ariz. Rev. Stat. Ann. §13-610(K), (L). Alaska also collects samples from all felony arrestees.

requirement that law enforcement officials collect DNA identification samples from adult felony arrestees, Cal. Pen. Code § 296(a)(2)(c). A felony is, by definition, a serious crime. *See* Black's Law Dictionary at 650 (8th ed. 2004) (defining felony as "a serious crime, usually punishable by imprisonment for more than one year or by death."); *U.S. v. Other Medicine*, 596 F.3d 677, 682 (9th Cir. 2010).

In any event, the Supreme Court's analysis does not hinge on any alleged distinction between a felony and appellants' view of what constitutes a serious crime. California has the same interest in determining an arrestee's identity — including his link to unsolved criminal offenses — regardless of the type of felony underlying his arrest. Nor does an arrestee's privacy interest at booking vary depending on the felony crime committed. *See King*, 133 S.Ct. at 1968 (noting that states authorize collection of a DNA identification sample from arrestees for different kinds of crimes).

Unlike appellants, the Supreme Court expressly recognized that "people detained for minor offenses can turn out to be the most devious and dangerous criminals." *Id.* at 1971. The Court cites California's examples of cases "where bail and diversion determinations were reversed after DNA identified the arrestee's violent history." *Id.* at 1974. None of the cited California case examples involved arrestee sample collection for felony

6

offenses appellants apparently consider "serious" enough for DNA collection.

### B.   *King* Does Not Rely on Judicial Oversight

Nothing in *King* suggests that collection of a DNA sample must wait until arraignment before a judge. To the contrary, like California, the federal government, and other states in this Circuit (*supra*, fn. 1), Maryland collects a DNA sample before arraignment, at the time of arrest. *King*, 133 S.Ct. at 1967 (citing Md. Pub. Saf. Code Ann. § 2-504(a)(3)(i)). Though Maryland does not process the sample until after a suspect is arraigned, *id.*, it is DNA sample collection that constitutes the search for Fourth Amendment purposes, not the subsequent act of processing the DNA collected. *Id.* at 1968–69. Not surprisingly, therefore, *King* focused on the constitutionality of collecting a DNA sample *at booking*: "DNA identification of arrestees is a reasonable search *that can be considered part of a routine booking procedure*." *Id.* at 1980 (emphasis added). The Court nowhere suggests that judicial oversight is of any significance in its Fourth Amendment analysis. *Id.* at 1970, 1980. Appellants' suggestion that California's law is invalid because DNA collection occurs before arraignment is flatly inconsistent with *King*.

### C. Differences in Expungement Procedures are not of Constitutional Dimension

Appellants further assert that California's law is unconstitutional because, unlike Maryland, California does not automatically destroy a DNA identification sample if the district attorney declines to prosecute the case. This factual difference between Maryland and California law, however, is not of constitutional dimension.

Expungement, although not automatic under California law, is readily available. Where no charges are filed, the case is dismissed, or the arrestee is either found not guilty or factually innocent, the arrestee may request that the sample be destroyed and the DNA profile expunged. Cal. Penal Code § 299(b).[2] The State's standard form is easy to use and requires basic information and a file-stamped copy of the docket entry or minute order showing the charges were dismissed, or a form letter from the district attorney that he has decided not to prosecute the case. (Appellees'

---

[2] Appellants repeatedly have claimed, despite the Attorney General's explanation to the contrary, that state officials will not expunge a sample and DNA profile until the statute of limitations has expired. To be clear, as the state agency charged with implementing the program, Cal. Penal Code § 295(g), (h)(1), the California Department of Justice has always interpreted section 299 to allow expungement as soon as the prosecuting attorney declines to press charges. While it is inconvenient for appellants to acknowledge this fact, the state has interpreted the law this way since its inception.

Supplemental Request for Judicial Notice, Ex. A-C.) Thus, any arrestee who is not charged with a crime or is found innocent can always request expungement of his sample.

*King* also recognizes that a DNA identification sample is analogous to a fingerprint, 133 S.Ct. at 1976, which does not require expungement when charges are dismissed. Although appellants have objected to comparing a DNA identification sample to a fingerprint, the Supreme Court has adopted just that comparison. *Id*.; *see also Rise v. Oregon*, 59 F.3d 1556, 1559 (9th Cir. 1995) ("The information derived from the blood sample is substantially the same as that derived from fingerprinting. . . ."). The fact that California (and other jurisdictions) have petitioner-initiated, rather than government-initiated, expungement procedures, does not amount to a valid Fourth Amendment distinction under *King*.

Finally, because the Fourth Amendment search — buccal swab collection for DNA analysis — occurs when an arrestee is in custody, differing policies related to sample expungement do not implicate the Fourth Amendment. The fact that an arrestee may later be released from custody and the charges against him dropped does not render invalid a search that was valid during the booking process. Appellants have suggested that the chemical analysis of the DNA sample is a second search requiring a second

9

Fourth Amendment analysis, but nowhere does the Court suggest this is the case. Rather, the only search that gives rise to the Fourth Amendment inquiry is the collection of the DNA sample from the arrestee's mouth through a buccal swab. *King*, 133 S.Ct. at 1970; *see also id*. at 1980 ("In light of the context of a valid arrest supported by probable cause respondents' expectations of privacy *were not offended by the minor intrusion of a brief swab of his cheeks*.") (emphasis added). Although the use of DNA sample to develop a DNA profile is relevant to determining the arrestee's privacy interest, *id*. at 1979, the Court does not suggest that the subsequent chemical analysis of the DNA at the CODIS loci is a second search that must be independently justified.

Finally, even if specific applications of California's Proposition 69 raised constitutional issues, that would not justify the injunction here at issue. After *King*, a facial challenge to Proposition 69 is untenable. *United States v. Salerno*, 481 U.S. 739, 745 (1987) (to successfully mount a facial challenge, party "must establish that no set of circumstances exists under which the Act would be valid."). Thus, denial of the motion for an injunction must be affirmed.

10

### D. Appellants Misapprehend the Underpinnings of the Decision in *King*

Appellants' final argument (Supp. Br. 9–10) that Maryland's law is constitutional because, unlike California's law, there is a "fair probability" that searching an arrestee's DNA will uncover evidence of a crime, fundamentally misunderstands the Court's ruling in *King*. Nowhere does *King* adopt the fair probability standard. Rather, the Court expressly states that the Fourth Amendment justification for the booking procedure, of which DNA identification sample collection is a part, is of "different origins and [has] different constitutional justifications" than the line of cases utilizing the fair probability standard. *King*, 133 S.Ct. at 1971.

Similarly, appellants' claim that DNA collection is justified only in cases involving crimes where "DNA evidence is likely to be relevant," has no support. (Supp. Br. 1, 3, 9.) DNA collection at booking is not aimed solely at solving the crime a suspect is arrested for; it is aimed at linking an arrestee's identification information supplied at booking to other identification information contained within law enforcement databases.

The Supreme Court did not find Maryland's law constitutional because the collection of a DNA identification sample was more or less likely to lead to evidence of a crime, but because it serves "significant state interests in

11

identifying [arrestees] not only so the proper name can be attached to his charges but also so that the criminal justice system can make informed decisions concerning pretrial custody." *Id*. at 1980. These same interests are served by California's Proposition 69.

## CONCLUSION

*King* establishes that states, like California, may collect a DNA identification sample at arrest as part of the booking process without offending the Fourth Amendment. The holding in *King* is that "DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure." *King*, 133 S.Ct. at 1980. There is no ambiguity in this holding, and no relevant distinction to be drawn between California and Maryland law. California's Proposition 69 is consistent with the Fourth Amendment, and the en banc court should affirm the district court and the panel decision.

Dated: July 22, 2013

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
TAMAR PACHTER
Supervising Deputy Attorney General
ENID A. CAMPS
Deputy Attorney General

S/ DANIEL J. POWELL

DANIEL J. POWELL
Deputy Attorney General
*Attorneys for Appellees*

SA2010100220

CERTIFICATE OF COMPLIANCE
PURSUANT TO FED.R.APP.P 32(a)(7)(C) AND CIRCUIT RULE 32-1
FOR 10-15152

I certify that:  (check (x) appropriate option(s))

[X]  1.  Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached **opening/answering/reply/cross-appeal** brief is

[X]  Proportionately spaced, has a typeface of 14 points or more and contains  **2,498**  words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words

or is

[ ]  Monospaced, has 10.5 or fewer characters per inch and contains ____ words or ___ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

[ ]  2.  The attached brief is **not** subject to the type-volume limitations of Fed.R.App.P. 32(a(7)(B) because

[ ]  This brief complies with Fed.R.App.P 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages.

or

[ ]  This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

[ ]  Proportionately spaced, has a typeface of 14 points or more and contains _____ words,

or is

[ ]  Monospaced, has 10.5 or fewer characters per inch and contains __ pages or __ words or __ lines of text.

[ ]  3.  Briefs in **Capital Cases**.
This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 and is

[ ]  Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words).

or is

[ ]  Monospaced, has 10.5 or fewer characters per inch and contains __ words or __ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

☐  4. **Amicus Briefs**.

☐ Pursuant to Fed.R.App.P 29(d) and 9th Cir.R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less,

or is

☐ Monospaced, has 10.5 or few characters per inch and contains not more than either 7,000 words or 650 lines of text,

or is

☐ Not subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed.R.App.P. 32 (a)(1)(5).

| July 22, 2013 | s/ Daniel J. Powell |
|---|---|
| Dated | Daniel J. Powell<br>Deputy Attorney General |

# CERTIFICATE OF SERVICE

| Case Name: | **Elizabeth Aida Haskell, et al. v. Kamala Harris, et al.** | No. | **10-15152** |
|---|---|---|---|

I hereby certify that on <u>July 22, 2013</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**APPELEES' SUPPLEMENTAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>July 22, 2013</u>, at San Francisco, California.

| Susan Chiang | s/ Susan Chiang |
|---|---|
| Declarant | Signature |

20713076.doc