**Case No. 10-15152**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

Before the En Banc Panel
(Opinion filed February 23, 2012)

ELIZABETH AIDA HASKELL, REGINALD ENTO, JEFFREY PATRICK LYONS, JR., and AAKASH DESAI, on behalf of themselves and others similarly situated,

*Plaintiffs-Appellants*,

v.

KAMALA D. HARRIS, Attorney General of California; EVA STEINBERGER, Assistant Bureau Chief for DNA Programs, California Department of Justice,

*Defendants-Appellees*.

**PLAINTIFFS-APPELLANTS' REPLY IN SUPPORT OF
SUPPLEMENTAL BRIEF RE: *MARYLAND V. KING***

On Appeal from the United States District Court
for the Northern District of California
The Honorable Charles R. Breyer
Case No. C 09-04779 CRB

Peter C. Meier
PAUL HASTINGS LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Michael T. Risher
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Plaintiffs-Appellants
ELIZABETH AIDA HASKELL, REGINALD ENTO, JEFFREY PATRICK LYONS, JR., and AAKASH DESAI, on behalf of themselves and others similarly situated

## TABLE OF CONTENTS

Page

1. California unreasonably seizes DNA from people arrested for non-serious offenses ................................................. 2
2. California unreasonably takes DNA from people who will never be charged with a crime ........................................... 5
3. California lacks the reasonable safeguard of judicial oversight ................................................................................... 6
4. King did not decide important Fourth Amendment questions that were not before it .................................................. 8
5. Plaintiffs and the Plaintiff Class are entitled to relief against any unconstitutional applications of the statute ........... 9
6. Conclusion ............................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashwander v. Tenn. Valley Auth.*,
  297 U.S. 288 (1936) .................................................................................... 9

*Ewing v. California*,
  538 U.S. 11 (2003) ...................................................................................... 5

*Georgia v. Randolph*,
  547 U.S. 103 (2006) .................................................................................... 9

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ................................................................... 10

*Mario W. v. Kaipio*,
  281 P.3d 476 (Ariz. 2012) ........................................................................... 7

*Maryland v. King*,
  133 S. Ct. 1958 (2013) ........................................................................ *passim*

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ..................................................................... 10

*Missouri v. McNeely*,
  133 S. Ct. 1552 (2013) ................................................................................ 9

*People v. Clytus*,
  209 Cal. App. 4th 1001 (2012) .................................................................... 5

*People v. Park*,
  56 Cal. 4th 782 (2013) ................................................................................ 5

*People v. Turner*,
  No. E048291, 2010 WL 3412074 (Cal. App. Aug. 31, 2010) ..................... 3

*People v. Yarbrough*,
  54 Cal. 4th 889 (2012) ................................................................................ 4

*United States v. Other Medicine*,
  596 F.3d 677 (9th Cir. 2010) ...................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) .................................................................................... 8

*Virginia v. Moore*,
  553 U.S. 164 (2008) .................................................................................... 3

**Statutes**

U.S. CONST. amend. IV ............................................................................... 3, 6, 8, 10

Cal. Penal Code §§ 1192.7(c) ..................................................................... 3, 4

Cal. Penal Code § 1192.7(c)(18) ................................................................. 4

**Other Authorities**

BLACK'S LAW DICTIONARY ....................................................................... 4

U.S. Dep't of Justice, Nat'l Institute of Justice, *DNA Sample Collection from
  Arrestees* (Dec. 7, 2012) ............................................................................ 8

Despite the Supreme Court's adherence to a totality-of-the-circumstances test in *Maryland v. King*, 133 S. Ct. 1958 (2013), the State argues that the decision establishes a bright-line, *per se* rule that allows the mandatory collection of DNA from any arrestee. This is wrong. By definition, a totality-of-the-circumstances analysis is fact-dependent and considers the law, the state's interest in that law, and the privacy interests of those subject to the law. Different laws and circumstances may lead to a different balance. While *King* did try to provide guidance to courts facing challenges to different laws addressing a similar topic, the majority opinion did not dictate outcomes and certainly did not establish a *per se* rule. Indeed, even the dissent in *King* recognized that the majority limited its holding by promising that it covers "only those arrested for 'serious offense[s].'" *Id.* at 1989 (Scalia, J., dissenting).

Contrary to the State's assertion, the central question this appeal presents is not whether *King*'s holding is a rule for all seasons—as the *King* majority acknowledges, it is not. Instead, this appeal presents two central questions:

(1) Does the California law differ from the Maryland law in a meaningful way?

(2) What is a "serious offense" for purposes of this analysis?

As to the former, the State does not dispute that the limited Maryland law meaningfully differs from the more aggressive and invasive California law at issue,

-1-

both in its breadth and its protections. As to the latter, *King* provides the answer, or at least the guidepost. It confines its "serious offenses" that can justify DNA collection to "dangerous offenses," or crimes of violence. *Id*. at 1974. California's law reaches far beyond those constitutional constraints in permitting blanket collection of DNA without judicial oversight and without meaningful protection. Because the California law reaches far beyond the Maryland law and far beyond what *King* permits, this Court should apply *King* to invalidate California's constitutional overreach.

> **1. California unreasonably seizes DNA from people arrested for non-serious offenses.**

It is "fundamental" to *King*'s analysis that Maryland law only allows the police to take DNA from persons charged with a "serious offense." *Id.* at 1978. Although the Court never specifies what it means by the term "serious offense," the offenses it discusses show that it is referring to offenses involving violence or the risk of violence: King himself had been arrested for menacing a group of people with a shotgun, and the other qualifying crimes include murder, kidnapping, and rape. *See id.* at 1966, 1967.

Unlike Maryland, California's DNA law includes not only individuals arrested for violent felonies but also people arrested for nonviolent offenses such

as joyriding, simple drug possession, and shoplifting beer.[1] These offenses are neither "serious" nor "violent" felonies under California law,[2] yet the State would shoehorn them into *King*'s definition of "serious offenses" even though the legislature has decided not to classify them as such.

Nothing in *King* supports the State's assertion that the crimes that trigger DNA collection under California's law qualify as serious offenses just because they are felonies; indeed, if the Court had meant to create such a rule it would simply have referred to the qualifying crimes as felonies. That it instead calls them "serious offenses" shows that it meant something different.[3]

Nor do the other sources cited by the government support its claim that any offense that California calls a felony is a serious crime for Fourth Amendment purposes. Whether a crime is serious for Fourth Amendment purposes must depend on the nature of the crime, not the label the government attaches to it. *Cf. Virginia v. Moore*, 553 U.S. 164 (2008) ("Whether or not a search is reasonable within the meaning of the Fourth Amendment . . . has never depended on the law

---

[1] *See* Pls.' Supp. Br. at 3; *People v. Turner*, No. E048291, 2010 WL 3412074, at *1, *3 (Cal. App. Aug. 31, 2010) ("shoplifting" four cases of beer as second-degree burglary).

[2] *See* Cal. Penal Code §§ 1192.7(c) (listing 42 serious felonies), 1192.8(a) (further defining term "serious felony"), 667.5(c) (listing 23 violent felonies). None of the named Plaintiffs was arrested for a serious or violent felony.

[3] The Court consistently refers to the charges that can result in DNA collection as "serious offenses" and "serious crimes." *See King*, 133 S. Ct. at 1965, 1967, 1970, 1974, 1977, 1978, 1980; *see id.* at 1974 ("dangerous offense").

-3-

of the particular State in which the search occurs."). The sole case the government cites for its theory that labeling an offense a felony makes it serious merely stands for the proposition that the addition of the label "felony" allowed federal prosecutors to reach "more serious cases" of the already violent offenses of child abuse, severe neglect, or sexual abuse. *United States v. Other Medicine*, 596 F.3d 677, 681 (9th Cir. 2010). Indeed, that case involved an indisputably serious and violent crime: a man "beating [his] nine-year-old stepson severely and repeatedly." *Id.* at 682.

And although the dictionary definition of "felony" cited by the government uses the word "serious," it includes only common-law felonies: "burglary, arson, rape, and murder." BLACK'S LAW DICTIONARY (9th ed. 2009). Indeed, this same dictionary separately defines "serious felony" as "[a] major felony, such as burglary of a residence or an assault that causes great bodily injury." *Id.* California, like Maryland, classifies these crimes as serious or violent felonies.[4]

---

[4] *See* Cal. Penal Code § 1192.7(c). Note that California divides burglary into two degrees: burglary of an inhabited dwelling is similar to common-law burglary and is classified as first-degree burglary; burglary of a car or business is second degree burglary. *See People v. Yarbrough*, 54 Cal. 4th 889, 892 (2012). Because burglary of an inhabited dwelling poses a risk of violence, *see id.*, first-degree burglary is a serious felony; other burglaries are not. *See* Cal. Penal Code § 1192.7(c)(18).

But the vast majority of offenses California designates as felonies are neither violent nor "serious" within *King*'s meaning, or even under California's own laws.[5]

Finally, even if the government were correct that when the *King* majority repeatedly wrote "serious offenses" and "serious crimes" it really meant "felonies," this cannot save California's collection program, which includes offenses that do not even properly fall within the broader "felony" category. Many of the relatively minor offenses covered by California's DNA law are not true felonies; instead, they are "wobblers," a distinct "special class of crimes" that "are chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor." *People v. Park*, 56 Cal. 4th 782, 789 (2013) (emphasis in original); *see also Ewing v. California*, 538 U.S. 11, 49-50 (2003) (Breyer, J., dissenting). Nevertheless, California also requires everybody arrested for a "wobbler" to provide a DNA sample, regardless of how the offense is eventually charged, if at all. *See* ER0144-45. This too illustrates the overbreadth of California's law.

### 2. California unreasonably takes DNA from people who will never be charged with a crime.

Nor can the state reasonably dispute that California's law, unlike Maryland's law, applies to those never actually charged with a crime. That difference again

---

[5] In fact, the legislature recently amended California law so that what it termed "low-level felony offenders," those convicted of these and hundreds of other non-serious crimes, will no longer be sentenced to prison. *See People v. Clytus*, 209 Cal. App. 4th 1001, 1004-05 (2012).

must be addressed. *King* acknowledged the governmental interest in concerns like "recaptur[ing] escaped prisoners," and noted that the "[p]retrial release of a person charged with a dangerous crime is a most serious responsibility." *See King*, 133 S. Ct. at 1974-75. But not only does the California law apply beyond those charged with a "dangerous crime," it applies to those who are never charged with a crime at all. The government never addresses this key distinction between the two laws; although it asserts that California's law helps the criminal-justice system make informed decisions about pretrial custody for those charged with dangerous offenses, it does not explain how this could apply to persons who are never charged with an offense. *See* Gov't Supp. Br. at 11-12. Neither *King* nor the government's briefing provides any justification for forcing people who are never charged with a crime to provide DNA samples.

### 3. California lacks the reasonable safeguard of judicial oversight.

*King* authorizes the warrantless collection of DNA only following "a valid arrest supported by probable cause." *King*, 133 S. Ct. at 1980; *see id.* at 1978 ("a valid arrest for a serious offense is fundamental"). Under the Maryland law, "a judicial officer ensures that there is probable cause" before the government can analyze or make any use of a DNA sample; otherwise the sample is immediately destroyed. *Id.* at 1967. Although the Court never says that the arresting officer's opinion alone is insufficient to establish probable cause, longstanding Fourth

-6-

Amendment doctrine requires that the existence of probable cause be determined by a neutral magistrate whenever possible. *See* Pls.' Supp. Br. at 6-7. Without a clearer statement from the Supreme Court, this Court should not abandon the fundamental distinction between searches that are authorized by a neutral magistrate and those that are not.[6]

Nor is it dispositive that the judicial review in *King* occurred after a sample had already been seized. Whether or not the subsequent analysis of a DNA sample constitutes a separate search—a question that the Court did not specifically address—what the government can and will do with a sample is one of the factors that the Court considered in its totality-of-the-circumstances analysis. *See King*, 133 S. Ct. at 1979-80. A rule that separately considers whether an arrest allows the government to seize a DNA sample and whether it allows it to analyze that sample is therefore consistent with *King* and with earlier caselaw. *See Mario W. v. Kaipio*, 281 P.3d 476, 478-79 (Ariz. 2012) (differentiating between a statute that required DNA collection from juveniles who had not yet been adjudicated delinquent and one that required DNA sampling and profiling post-adjudication).

---

[6] Because charging and probable cause determinations are made long before DNA samples can be sent to the lab and tested, prohibiting the government from using samples taken from arrestees who are discharged for want of probable cause would require only minor changes to the existing collection protocol. *See* Pls.' Supp. Br. at 5, 7.

### 4. *King* did not decide important Fourth Amendment questions that were not before it.

The State relies on a passing reference in *King* to "laws similar to the Maryland Act" to argue that the "particulars" of each state's laws are "inconsequential to the Fourth Amendment analysis." Pls.' Supp. Br. at 4-5. This takes the language in *King* too far. Although *King* acknowledges that its analysis "implicates more than the specific Maryland law," 133 S. Ct. at 1968, and certainly would be guiding on statutes limited to "serious" or violent offenses, that does not mean that this Court should be blind to the aspects of the unusually broad California law that go beyond those "serious offenses."[7]

Like all Article III courts, the Supreme Court "sit[s] to decide concrete cases and not abstract propositions of law" that cannot affect the rights of the parties before it. *Upjohn Co. v. United States*, 449 U.S. 383, 386 (1981). This principle applies with particular force when constitutional questions are involved: in Justice Brandeis's classic statement of the rule, the "Court will not anticipate a question of constitutional law in advance of the necessity of deciding it," and when it must decide one it still "will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Ashwander v. Tenn.*

---

[7] Fifteen of the 28 states that take DNA from arrestees "limit collection to violent crimes, including sexual assaults." U.S. Dep't of Justice, Nat'l Institute of Justice, *DNA Sample Collection from Arrestees* (Dec. 7, 2012), *available at* http://nij.gov/topics/forensics/evidence/dna/collection-from-arrestees.htm.

-8-

*Valley Auth.*, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) (citations omitted).

The differences between Maryland's narrow law and California's broad one mean that the validity of California's arrestee-testing law was not before the Court in *King*, and that opinion should not be read as anticipating the question presented here or as formulating a rule so much broader than what was at issue in that case. Although *King*'s analysis must guide this Court's, under a totality-of-the-circumstances analysis, different circumstances lead to different results. *See Georgia v. Randolph*, 547 U.S. 103, 126 (2006) (Breyer, J., concurring) (if "the circumstances []change significantly, so should the result"); *see also Missouri v. McNeely*, 133 S. Ct. 1552, 1559-63 (2013). The significant differences between Maryland's and California's law require a different result here than in *King*.

### 5. Plaintiffs and the Plaintiff Class are entitled to relief against any unconstitutional applications of the statute.

As Plaintiffs pointed out in their supplemental brief, they have challenged the statute both facially and as-applied on behalf of a class, and they are therefore entitled to relief against any unconstitutional application of it. *See* Pls.' Supp. Br. at 4 n.1. The government's suggestion that this Court must affirm if it determines that California may lawfully take DNA from some arrestees is thus incorrect. *See* Gov't Supp. Br. at 10. If, for example, this Court rules that the statute can constitutionally operate only in the circumstances upheld in *King*—that, absent a

-9-

Case: 10-15152    07/29/2013        ID: 8721782    DktEntry: 122    Page: 14 of 17

warrant or exigent circumstances, the state can take samples only from persons arrested and charged with serious or violent crimes, and that it can only use those samples after a judicial finding of probable cause—the district court can and should issue an injunction prohibiting the state from violating that rule. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1199, 1208 (9th Cir. 2009) (in as-applied and facial challenge to law, reversing and remanding for district court to issue "appropriate injunction" "consistent with this [Court's] opinion"). This would protect the constitutional rights of the class members without interfering with the state's authority to take DNA in circumstances allowed by the Fourth Amendment. *See generally Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

### 6. Conclusion

Under *King*, California's arrestee-testing program violates the Fourth Amendment. Thus, this Court should reverse and remand for the district court to issue a preliminary injunction consistent with this Court's opinion.

-10-

Respectfully submitted,

Dated: July 29, 2013					PAUL HASTINGS LLP


							By:	/s/ Peter C. Meier
								Peter C. Meier

Dated: July 29, 2013					AMERICAN CIVIL LIBERTIES UNION
							FOUNDATION OF NORTHERN
							CALIFORNIA, INC.


							By:	/s/ Michael T. Risher
								Michael T. Risher

							Attorneys for Plaintiffs-Appellants
							Elizabeth Aida Haskell, Reginald Ento, Jeffrey
							Patrick Lyons, Jr., and Aakash Desai, on behalf
							of themselves and others similarly situated

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C)(i) and Circuit Rule 32-1, the attached supplemental brief is proportionately spaced, has a typeface of 14 points or more and contains 2377 words, as determined by the word-count feature of the word processing system.  In compliance with Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this number includes headings, footnotes, and quotations but not the caption, table of contents, table of citations, or certificate of counsel.

Dated:  July 29, 2013

/s/ Peter C. Meier<br>
Peter C. Meier

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 29, 2013.

      I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                                                     /s/ Doreen Bordessa
                                                      DOREEN BORDESSA