No. 10-15152

IN THE

# United States Court of Appeals for the Ninth Circuit

ELIZABETH AIDA HASKELL, et al.,

Appellants,

v.

KAMALA D. HARRIS, et al.,

Appellees.

Appeal from the United States District Court
for the Northern District of California
in Case No. C 09-04779 CRB
Judge Charles R. Breyer

**SUPPLEMENTAL BRIEF FOR AMICUS CURIAE DNA SAVES IN SUPPORT OF APPELLEE AND AFFIRMANCE**

JONATHAN S. FRANKLIN
MARK T. EMERY
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-0466

October 28, 2013

Counsel for Amicus Curiae

# TABLE OF CONTENTS

**Page**

STATEMENTS PURSUANT TO FED. R. APP. P. 29 .......................................... iv

INTEREST OF AMICUS CURIAE ..................................................................... 1

ARGUMENT ..................................................................................................... 3

I. *KING* IS CONTROLLING PRECEDENT .................................................. 3

II. THIS CASE INVOLVES THE SAME HEIGHTENED GOVERNMENT INTERESTS AND DIMINISHED PRIVACY INTERESTS AS *KING* ..................................................... 4

A. The Arrestee's Offense Is Immaterial To *King*'s Holding ........ 5

B. It Is Immaterial Whether Charges Are Dropped Or There Is A Later Judicial Finding Of Probable Cause ......................... 8

III. ARRESTEE DNA IDENTIFICATION SAVES LIVES AND PREVENTS HARM ................................................................................ 9

CONCLUSION ................................................................................................ 12

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)(B)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Maryland v. King*, 133 S. Ct. 1958 (2013) ................................................*passim*

*People v. Buza*, 129 Cal. Rptr. 3d 753 (Cal Ct. App. 2011), *vacated*, No. S196200 (Cal. July 10, 2013)..................................................................11

*People v. Sutton*, 48 Cal. 4th 533, 540 (2010)....................................................9

*United States v. Andrade-Larrios*, 39 F.3d 986 (9th Cir. 1994)...........................3

**STATUTES:**

Cal. Pen. Code. § 299.5(i)(2)(a) ........................................................................4

Md. Code 2-512 ......................................................................................................4

**OTHER AUTHORITIES**

Bureau of Forensic Services, Cal. Dep't of Justice, *Arrestee DNA Leads to Arrest of Suspect in Sierra LaMar* Abduction (July 10, 2012)...........10

Bureau of Forensic Services, Cal. Dep't of Justice, *DNA Database Hits to Murder, Rape, and Robbery: Two Studies of the Correlations Between Crime of Arrest and DNA Database Hits to Murder, Rape, Robbery Offenses*..........................................................................5

Bureau of Forensic Services, Cal. Dep't of Justice, *FAQ: Effects of the All Adult Arrestee Provision, Q1,Q2,Q3*.................................................11

Bureau of Forensic Services, Cal. Dep't of Justice, *Impact of Buza Decision* ..............................................................................................11

Kimberly White, *DNA Hit Leads Police to Watsonville Man Arrested for Kidnapping and Assaulting Woman*, Santa Cruz Sentinel, May 12, 2011 ......................................................................................................10

## STATEMENTS PURSUANT TO FED. R. APP. P. 29

This brief is being filed pursuant to the Court's order of August 14, 2013 granting leave to file supplemental amicus briefs.

Pursuant to Fed. R. App. P. 29(c)(5), DNA Saves states that no party's counsel authored the brief in whole or in part or contributed money intended to fund preparing or submitting the brief and that the following persons contributed money that was intended to fun preparing or submitting the brief: Julia Adams, Merideth Alston, Lilly Anaya, Mike Antiporda, Jill Barkley, Magi Bish, John Bish, Patti Bishop, Boyea Law Office, Joe & Jill Brininstool, Ken Britt, Sharon Brooks, Cathrynn Brown, Jane Bujac, Margot Cabrera, Carlsbad Radio Inc., Joe & Judy Carrasco, Martha Chapman, Carol Chelkowski, Mike Cleary, Anthony & Arlene Cooper, Wanda Cotton, Gayle Cowart, Kathy Cox, BA Crawford, Susan & Jason Crockett, Debe Culberson, Mike Currier, Linda Dages, Steve Daley, Rosemarie D'Allessandro, Becca DeMauro, Denise Madrid, Christy Dickerson, Kristen Dietz, Kay Doss, Keri Drexel, Carla Duarte, Michelle Duffy, Jay & Tracy Francis, Ellen-Beth Fullwood, David & Cheryl Gallegos, Avelino Garcia, Lindsay Garza, Cha Cha Gillette, Garth & Heidi Goodey, JR & Peggy Gratton, Father Tom Gray, Alton & Susie Green, Donna Gren, Joan Hargrave, Ron Head, John & Julia Heaton, Leslie Heinsch, Gary Henning, Veronica Hernandez, Brad Herndon, Scott & Kathleen Hillyard, Bob & Betti Hodges, Shawna Hooper, Jaren F. Howard, Dale &

Cheryle Janway, Tricia Johnson, Chris Jones, Vicki Kelly, Drew Kesse, Joyce Kesse, Mr. & Mrs. Don Kidd, Jody Knox, Mary Kozakiewicz, Tom Lairson, Patty Lairson, Matt Leroch, Life Technologies, Rita London, Joe Lopez, SA Lott, Justin Lovell, Mark Lunsford, Doug Lyall, Donavan Majer, Clinton & June Marrs, Beverly Mars, Janis McCall, Phyllis & Chuck McEndree, Sarah McEndree, Farrah Mendoza, Mike McNamara, Jerri McTaggart, Michelle Mesarchik, Mika Moulton, Cathy Muncrief, Bob & Judy Murray, Doug & Laura Neal, Colleen Nick, Cynthia Norman, Judy Norman, Ofelia Orgega, Don Owen, Robert Duane Patterson, Stayce Pead, Kathy Pichler, Abby Potash, PR Consultants, Inc., Wren Prather-Stroud, Sergio Ramos, Christina Ramos, Jannel Rap, Terry Reed, Kayleen Reed, Randy Richardson, Karen Richardson, Ahmad Rivazfar, Mike & Colleen Rogers, Kimberly Rogge-Rogers, Randy Rominger, Bob & Susan Roth, Erin Runnion, Elaine Runyon-Simmons, Carol Ryan, Mark & Debra Schinnerer, Mark Sconce, Cindy Sconce, Dawn Semmler, SEPCO, Inc., Michael & Karen Sepich, Hilary Sessions, Roger & Cindy Short, Kassie Simmons, Ed Smart, Sherri Smith, Laurie Smith, Tory Smith, Missey Smith, Gay Smither, Rick Sneathen, Sam Soto, Mark & Debra Stanger, Craig & Sheri Stephens, Betty Stringfellow, Clifford Stroud, Mike & Brenda Suggs, Daniel Suniga, Kathy Teague, Diena Thompson, Patty Tiscareno, Paul & Janis Trone, Katie Trotter, Danielle Trotter, Debe Wagner, Pattie Walker, Sara Walker, Frank Walker, Linda Walker, Mr. & Mrs. W.B.

Waters, Western Commerce Bank, Dennis & Jayne Westfall, Janelle Whitlock, Ryan Williamson, Priscila Williamson, Kelly Yates, Maggie Zingman.

IN THE

# United States Court of Appeals for the Ninth Circuit

No. 10-15152

ELIZABETH AIDA HASKELL, et al.,

Appellants,

v.

KAMALA D. HARRIS, et al.,

Appellees.

Appeal from the United States District Court
for the Northern District of California
in Case No. C 09-04779 CRB
Judge Charles R. Breyer

**SUPPLEMENTAL BRIEF FOR AMICUS CURIAE DNA SAVES IN SUPPORT OF APPELLEE AND AFFIRMANCE**

## INTEREST OF AMICUS CURIAE

DNA Saves is a 501(c)(4) non-profit association that educates policy-makers and the public about the value of forensic DNA. DNA Saves filed amicus briefs in this case before the panel and the en banc Court, and files this brief pursuant to the Court's August 14, 2013 order granting leave to file amicus briefs addressing *Maryland v. King*, 133 S. Ct. 1958 (2013).

DNA Saves was formed by Jayann and David Sepich in late 2008, marking the five year anniversary of the vicious murder of their daughter, Katie. Had a

DNA sample been taken from Katie's murderer, Gabriel Avilla, upon arrest for an unrelated crime, the Sepichs would have discovered who killed their daughter only three months after her death. *See* Decl. of Jayann Sepich ¶¶ 9-10 (SER2-3). Instead, Avilla remained free for over three years to victimize more daughters, while the Sepichs waited for answers. The Sepichs hope that by advocating for better DNA testing laws they can prevent other parents from asking "why?"

DNA Saves is committed to working with every state and the federal government to pass laws allowing DNA to be taken upon arrest, and to provide meaningful funding for DNA programs. In January 2007, New Mexico implemented "Katie's Law," which requires DNA profiles for most felony arrestees to be included in the database. New Mexico's DNA database program has already registered at least 514 matches of unsolved crimes to 463 individual arrestee DNA profiles. Twenty-nine of those matches identified suspects in unsolved murders, and 82 identified suspects in unsolved sex-related crimes. The first matched arrestee sample led to a double homicide conviction.

DNA Saves is also vitally committed to ensuring that courts correctly apply the Constitution and allow legislatures to enact these sensible and effective laws. The resolution of this issue will have a direct and profound effect on DNA Saves' efforts to expand the use of DNA identification of arrestees throughout the country so that more recidivist crime can be prevented.

## ARGUMENT

## I. *KING* IS CONTROLLING PRECEDENT.

The Supreme Court's decision in *King* is not merely an "important precedent this Court must consider in evaluating this appeal." Appellants' Supp. Br. 1. It is a controlling precedent. *King* upheld Maryland's arrestee DNA identification law because there is a strong governmental interest in law enforcement being able to "process and identify the persons and possessions they must take into custody" and a cheek swab analyzed for CODIS markers reveals no private information and "does not increase the indignity already attendant to normal incidents of arrest." 133 S. Ct. at 1970, 1979. That holding applies foursquare to California's DNA law. In California, just as in Maryland, government has a strong interest in identifying the people they must take into custody and a cheek swab impinges on no legitimate privacy interests of arrestees.

The thrust of appellants' argument is that *King* was limited to its precise facts and its holding does not apply if they can identify any difference between the Maryland and California statutes. Not so. None of the differences noted by appellants were material to *King*'s holding. The holding of a case is "[t]he proposition of law which requires that the particular facts in that case produce the result." *United States v. Andrade-Larrios*, 39 F.3d 986, 990 (9th Cir. 1994). The propositions of law that produced the result in *King* produce the same result here.

There are, of course, differences between the Maryland and California statutes. In addition to the ones appellants note, the California law was enacted in 2004 by the people of California whereas the Maryland law was enacted in 2009 by the Maryland legislature, and California authorizes civil liability for government employees who make unauthorized disclosures of DNA information whereas Maryland does not. *Compare* Cal. Pen. Code § 299.5(i)(2)(a) *with* Md. Code 2-512. None of the differences, however, had any bearing on the propositions of law established in *King*, and none materially distinguish *King*.

## II. THIS CASE INVOLVES THE SAME HEIGHTENED GOVERNMENT INTERESTS AND DIMINISHED PRIVACY INTERESTS AS *KING*.

In *King*, the Supreme Court held that "[t]he legitimate government interest served by the Maryland DNA Collection Act is one that is well established: the need for law enforcement officers in a safe and accurate way to process and identify the persons and possessions they must take into custody." 133 S. Ct. at 1970. That interest is not outweighed by the diminished expectations of privacy possessed by all people taken into custody. "The additional intrusion upon the arrestee's privacy beyond that associated with fingerprinting is not significant" because (1) "the CODIS loci come from noncoding parts of the DNA that do not reveal the genetic traits of the arrestee," (2) "even if non-coding alleles could provide some information, they are not in fact tested for that end" and (3)

Maryland's law "provides statutory protections that guard against further invasion of privacy." *Id*. at 1976, 1979.

*King*'s holding squarely applies to California's law. California's law enforcement officers have just as much interest in identifying the persons they must take into custody as Maryland's officers. California law contains essentially the same (if not stronger) privacy protections as Maryland's. And arrestees in California have no greater interest than their Maryland counterparts in shielding their non-private information so that nobody will know what crimes they have committed or will commit. These government and privacy interests are unaffected by what offense the arrestee is detained for, whether formal charges are pressed, or whether there has been a judicial probable cause finding.

### A. The Arrestee's Offense Is Immaterial To *King*'s Holding.

Both the government and individual interests are the same whether or not a person is arrested for what appellants would call a "serious" crime. Although California's law applies only to serious crimes, *see* Appellees' Supp. Br. 5-6, that is immaterial to *King*'s holding.

The need for identification and processing of people taken into custody is the same regardless of the offense for which the person has been arrested and detained. Recidivist criminals do not always or even usually commit only one kind of crime. Analysis of records of more than 100 California felony arrestees

concluded that the majority of hits to unsolved violent crimes came in connection with arrests for lower level felonies, such as fraud and drug offenses. Bureau of Forensic Services, Cal. Dep't of Justice ("BFS-CDOJ"), *DNA Database Hits to Murder, Rape, and Robbery: Two Studies of the Correlations Between Crime of Arrest and DNA Database Hits to Murder, Rape, Robbery Offenses* (oag.ca.gov/sites/all/files/pdfs/bfs/arrestee.pdf). In 82 percent of cases, the unsolved violent crimes were committed before the offense for which the person was arrested and a DNA sample was obtained. *Id*.

As the Court noted in *King*, "[a] suspect's criminal history is a critical part of his identity that officers should know when processing him for detention. It is a common occurrence that '***[p]eople detained for minor offenses can turn out to be the most devious and dangerous criminals*** . . . .'" *King*, 133 S. Ct. at 1971 (citation omitted; emphasis added) (citing examples). The Court would not have cited such examples if it had limited its holding to only arrests for non-minor offenses. Indeed, identification of an arrestee as a perpetrator "may have the salutary effect of freeing a person wrongfully imprisoned for the same offense," *Id.* at 1974, and this interest is unaffected by the arresting offense. Although Justice Scalia vehemently disagreed with the majority's holding, even he recognized that the Court's reasoning was unaffected by this factor because "[t]his

Court does not base its judgments on senseless distinctions." *Id*. at 1989 (Scalia, J., dissenting).

Similarly, arrestees' privacy interests do not change depending on the crimes for which they are arrested. "The expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope,'" *id*. at 1978 (citation omitted), and that goes for anyone taken into police custody, regardless of the reason. Likewise, an arrestee's purported privacy interest in shielding identifying information does not change depending on why he or she was arrested. The arrestee has no legitimate privacy interest because the only information that is ever obtained or used consists of non-coding markers and California provides the same basic protections as Maryland does against unauthorized testing or disclosure of DNA information.

Appellants would have courts and future legislatures engage in the arbitrary task of deciding which arrestees' offenses are serious enough for law enforcement to be able to fully identify them. The Court should not accept that invitation. With DNA identification, "[t]he additional intrusion upon the arrestee's privacy beyond that associated with fingerprinting is not significant." *King*, 133 S. Ct. at 1976. Arrestees cannot avoid fingerprinting depending on the offense, and neither should they avoid DNA identification. No arrestee has the right to shield identifying information from view.

### B. It Is Immaterial Whether Charges Are Dropped Or There Is A Later Judicial Finding Of Probable Cause.

Nor does the government or privacy interest change depending on whether an arrestee is formally charged or there is a later judicial finding of probable cause. Appellants make much of the fact that California, like most states, may take DNA samples from arrestees whose cases are later dismissed without charges. But *King* relied on the governmental interest in identifying ***all*** people who have been taken into custody, not merely those who have had charges filed after a judicial hearing.

Although Maryland does not analyze arrestee DNA samples until after a probable cause hearing, *King*'s holding did not turn on that fact. To the contrary, the Court held that the government's interest in identifying arrestees applies to everyone the police "take into custody." 133 S. Ct. at 1970. *See also id*. ("The arrestee is already in valid police custody for a serious offense supported by probable cause."), *id*. at 1971 (noting "the real interest in identification at stake when an individual is brought into custody"). The Court relied on its "reluctan[ce] to circumscribe the authority of the police to conduct reasonable booking searches," *id*. at 1974—searches that apply to ***anyone*** booked into custody. And "[w]hen probable cause exists to remove an individual from the normal channels of society and hold him in legal custody, DNA identification plays a critical role in serving those interests." *Id*. at 1971. The diminished privacy interest applies to anyone who is "taken into police custody" upon a police officer's finding of

probable cause *id*. at 1978, not merely those who have had charges sustained after a judicial finding at arraignment or indictment.

Moreover, law enforcement's interest in using DNA identification to "ensure that they have the proper person under arrest and that they have made the necessary arrangements for his custody" and to "prevent suspicion against or prosecution of the innocent," *id*. at 1977, applies regardless of whether a case is eventually dismissed either before or after arraignment. "A suspect's criminal history is a critical part of his identity that officers should know when processing him for detention." *Id*. at 1971. In California, if a criminal complaint is dismissed before arraignment, it can be refiled for any reason. *See*, *e.g.*, *People v. Sutton*, 48 Cal. 4th 533, 540 (2010). All arrestees are fingerprinted on booking regardless of whether charges are eventually dismissed or there is a later judicial finding of probable cause. It even more important for police and prosecutors to also employ DNA identification—which is a "markedly more accurate form of identifying arrestees," *King*, 133 S. Ct. at 1976—so that fully informed decisions can be made on whether to dismiss charges or, if charges are dismissed, whether to refile them.

## III. ARRESTEE DNA IDENTIFICATION SAVES LIVES AND PREVENTS HARM.

Although the nature of arrestees' offenses is irrelevant to whether they must provide identifying information, in deciding this case the Court has cause to be concerned about serious offenses—those that would be solved or prevented if law

enforcement is allowed to utilize the most up-to-date identification techniques available. The Court should not tie the hands of law enforcement by forcing them to use only yesterday's technology in effecting that interest.

In *King*, the Supreme Court listed Timothy McVeigh, serial killer Joel Rifkin, and one of the 9-11 hijackers as people who were "detained for minor offenses" but "turn[ed] out to be the most devious and dangerous criminals." 113 S. Ct. at 1971 (citation and quotation omitted). Unfortunately, California provides many more examples. A DNA sample taken from Octavio Castillo at his 2011 arrest for receiving stolen property identified him as the man who, only months earlier, had kidnapped a woman while she was walking home and sodomized and severely beat her. He was identified and convicted based on a match to his DNA profile taken at the earlier arrest, for which he was still out on bail.[1] Antolin Garcia-Torres was arrested and charged with the 2012 abduction and murder of Sierra LaMar, a 15-year-old girl, and three other crimes based on DNA identification performed at his arrest for a different felony in 2010.[2] His 2010 charge was dismissed when an earlier misdemeanor probation was extended. *Id*.

---

1 *See* Kimberly White, *DNA Hit Leads Police to Watsonville Man Arrested for Kidnapping and Assaulting Woman*, Santa Cruz Sentinel, May 12, 2011 (www.santacruzsentinel.com/localstories/ci_18054267).

2 BFS-CDOJ, *Arrestee DNA Leads to Arrest of Suspect in Sierra LaMar Abduction* (July 10, 2012) (oag.ca.gov/sites/all/files/pdfs/bfs/garcia_torres_sierra_lamar_abduction.pdf).

If appellants' view of the law had been accepted, these crimes might never have been solved. Garcia-Torres' original charges were dismissed and Castillo's might not have been what appellants would consider serious enough to warrant identifying him fully. If this Court adopts their position, innocent people will die who would otherwise be saved, and preventable harm will befall many others. Indeed, recent statistics emphatically show the importance of arrestee DNA to Californians. As of October 1, 2013, the California DNA database program's aided 24,065 investigations since arrestee DNA collection began in 2009—a nearly threefold increase from the total number of investigations aided (8,307) during California's previous 25 years of samples from only convicted felony offenders. BFS-CDOJ, *FAQ: Effects of the All Adult Arrestee Provision, Q1,Q2,Q3* (oag.ca.gov/bfs/prop69/faqs). When the program was temporarily halted due to the since-vacated decision in *People* v. *Buza*, 129 Cal. Rptr. 3d 753 (Cal Ct. App. 2011), hits fell precipitously. BFS-CDOJ, *Impact of Buza Decision* (oag.ca.gov/ sites/all/files/pdfs/bfs/arrestee_vs_co_submissions_since_2009_042412.pdf).

We will never know the exact number, but if even a single life is lost by not allowing the government to employ this simple tool to identify recidivists before they strike again, that is one life too many. If there were real privacy interests at stake, perhaps these dire consequences would have to be tolerated. But as *King* clearly confirms, there are no such interests. Just as with traditional fingerprinting

and other forms of identification, no arrestee has a protected interest in concealing his identity so that nobody can ever link him or her to crime scene evidence.

## CONCLUSION

For the foregoing reasons and those set forth in DNA Saves' earlier briefs, the Court should affirm the judgment below.

Respectfully submitted,

/s/ Jonathan S. Franklin
Jonathan S. Franklin
Mark T. Emery
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-0466

October 28, 2013

Counsel for Amicus Curiae

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)(B)**

I hereby certify that this brief was produced using the Times New Roman 14 point typeface and contains 2,493 words.

/s/ Jonathan S. Franklin
Jonathan S. Franklin
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-0466

October 28, 2013

Counsel for Amicus Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Jonathan S. Franklin
Jonathan S. Franklin
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-0466