Case No. 10-15152

==============================================================

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Before the En Banc Panel

(Opinion filed February 23, 2012)

==============================================================

ELIZABETH AIDA HASKELL, REGINALD ENTO, JEFFREY PATRICK LYONS, JR., and AAKASH DESAI, on behalf of themselves and others similarly situated,

*Plaintiffs-Appellants*,

v.

KAMALA D. HARRIS, Attorney General of California; EVA STEINBERGER, Assistant Bureau Chief for DNA Programs, California Department of Justice,

*Defendants-Appellees.*

_____

## SUPPLEMENTAL BRIEF AMICUS CURIAE OF CALIFORNIA ATTORNEYS FOR CRIMINAL JUSTICE IN SUPPORT OF APPELLANTS

On Appeal from the United States District Court
for the Northern District of California
The Honorable Charles R. Breyer
Case No. C 09-04779 CRB

_____

| | |
|---|---|
| Kathryn Seligman, SBN 100218 | Linda F. Robertson, SBN 77921 |
| FIRST DISTRICT APPELLATE PROJECT | CALIFORNIA APPELLATE PROJECT |
| 730 Harrison Street, Suite 201 | 101 – 2d Street, Suite 600 |
| San Francisco, CA 94107 | San Francisco, CA 94105 |
| Telephone: (415) 495-3119 | Telephone: (415) 495-0500 |
| kseligman@fdap.org | lrobertson@capsf.org |

Attorneys for California Attorneys for Criminal Justice

# DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus curiae states that it does not have a parent corporation, and that no publicly held corporation owns 10% or more of stock in the organization.

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST ...............................................................................1

INTRODUCTION....................................................................................................1

I. BECAUSE CALIFORNIA DOES NOT REQUIRE EXPUNGEMENT OF ARRESTEES' DNA IF THEY ARE NOT CHARGED OR CONVICTED, THE STATE'S DNA SEARCHES VIOLATE THE FOURTH AMENDMENT ..............3

   A.  Because of The Differences Between the States' Expungement Procedures, California, Unlike Maryland, Retains Long-Term Possession of Exonerated Arrestees' DNA ...................................................................................................3

   B.  California's Statute Contemplates Repeated Suspicionless Comparisons of an Arrestee's DNA Profile With Evidence Profiles in the CODIS Database, Even After Charges Are No Longer Pending..................................................................6

   C.  Comparisons Between DNA and Fingerprints, as Means of Identification, Fail to Account for the Greater Danger of Mistaken DNA Matches. ...........................7

   D.  The State's Long-Term Storage of the DNA Sample Implicates Arrestees' Reasonable Expectations of Privacy in Their Genetic Data.................................10

CONCLUSION ......................................................................................................13

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Haskell v. Harris*, 669 F.3d 1049 (9th Cir. 2012) .................................. 2, 3, 5, 6, 10

*Maryland v. King*, 133 S.Ct. 1958 (2013) ................................ 1, 2, 3, 5, 7, 8, 11, 13

*United States v. Amerson*, 483 F.3d at 73 (2d Cir. 2007) .......................................... 11

*United States v. Jones*, 132 S.Ct. 945 (2012) .................................................. 7, 11, 12

*United States* v. *Kincade,* 379 F.3d 813 (9th Cir. 2004) .......................................... 11

*United States v. Kriesel,* 720 F.3d 1137 (9th Cir. 2013) .............................. 10, 11, 13

**State Statutes**

Cal. Penal Code §295.1(a) .......................................................................................... 12

Cal. Penal Code §299 ............................................................................................ 3, 4

Cal. Penal Code §299.5 .............................................................................................. 12

**Federal Rules**

Federal Rule of Appellate Procedure 29(a) ................................................................ 1

Federal Rule of Appellate Procedure 29(c)(5) ........................................................... 1

**Other Authorities**

"Monte Sereno:  Prosecutors say murder case remains strong despite exoneration of two defendants," San Jose *Mercury News*, June 27, 2013 (visited Oct. 26, 2013), <http://www.mercurynews.com/ci_23555417/monte-sereno-prosecutors-say-kumra-murder-case-remains>. ...................................................................................9

"Touch DNA:  From the Crime Scene to the Crime Laboratory," Forensic Magazine, April 12, 2013 (visited Oct. 23, 2013), <http://www.forensicmag.com/articles/2013/04/touch-dna-crime-scene-crime-laboratory#.UmgmJvlthmc>. ....................................................................................8

DOJ Website <http://oag.ca.gov/bfs/prop69/faqs#> [FAQS: *Getting Expunged or Removed from the CAL-DNA Data Bank* Q.1 (as of Oct.12, 2013) .......................4

Itiel E. Dror, Greg Hampikian, *Subjectivity and bias in DNA mixture interpretation*, Science and Justice 51 (2011) 204-208. ................................................................9

William C. Thompson, *Forensic DNA Evidence:  The Myth of Infallibility*, in Genetic Explanations:  Sense and Nonsense, S. Krimsky and J. Gruber, eds., Harvard University Press, 2013, 227-255............................................................8

## STATEMENT OF INTEREST

Amicus files this brief pursuant to this Court's order of August 14, 2013, setting this case for oral argument and granting leave, pursuant to Federal Rule of Appellate Procedure 29(a), to any amicus wishing to file a brief bearing on the issues to be re-argued.

California Attorneys for Criminal Justice (CACJ) appeared as amicus curiae in this case and filed a joint brief on March 10, 2010 with Federal Defenders of the Eastern and Southern Districts of California and the National Association of Criminal Defense Lawyers (NACDL).

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no one, except undersigned counsel, has authored the brief in whole or in part, or contributed money towards preparation of this brief.

## INTRODUCTION

In *Maryland v. King*, 133 S.Ct. 1958 (2013), the Supreme Court upheld the constitutionality of Maryland's statute requiring DNA collection from arrestees charged with violent crimes or burglaries. Maryland delays processing the DNA sample and placing the resulting profile in databases until after a judicial finding of probable cause to detain pending trial on qualifying offenses, made at arraignment.

1

For those not held in pre-trial custody or convicted, DNA samples and profiles are automatically expunged. *Id*. at 1967.

California's DNA Act is substantially different. California mandates DNA collection immediately following arrest for any felony, including non-violent, non-serious crimes. State officials then commence processing the sample to create and upload the database profile; they need not wait until the arrestee is charged or detained pre-trial after a judicial probable cause finding. California does not require automatic expungement of exonerated arrestees' DNA. *Haskell v. Harris*, 669 F.3d 1049, 1051-52 (9th Cir. 2012).

This brief focuses on the constitutional significance of the difference between the two states' expungement procedures. These differences and the above-listed distinctions, mandating processing and retention of DNA collected from felony arrestees never charged or held in pre-trial custody, require re-assessment of the interests balanced in *King* to determine the Maryland Act's constitutionality – the governmental interest in processing the DNA of arrestees in custody pending trial to determine their dangerousness, and the privacy interests of these pre-trial detainees. *King*, 133 S.Ct. at 1970-78. Because of these distinctions, California's arrestee-search provisions are unconstitutional, particularly as applied to the *Haskell* plaintiffs.

2

# I.
# BECAUSE CALIFORNIA DOES NOT REQUIRE EXPUNGEMENT OF ARRESTEES' DNA IF THEY ARE NOT CHARGED OR CONVICTED, THE STATE'S DNA SEARCHES VIOLATE THE FOURTH AMENDMENT.

**A.     Because of The Differences Between the States' Expungement Procedures, California, Unlike Maryland, Retains Long-Term Possession of Exonerated Arrestees' DNA.**

Maryland requires automatic, non-discretionary expungement of exonerated arrestees' DNA samples and profiles. Arrestees are notified of this practice at the time of collection. Pursuant to Maryland's statute, an arrestee's DNA is expunged if he is not held in pre-trial custody post-arraignment or not convicted. At arraignment, if the judicial officer fails to find probable cause to detain pending trial on a qualifying crime, the DNA sample is immediately destroyed. If the defendant is not convicted, his DNA sample is destroyed and his profile expunged from all databases. *King*, 133 S.Ct. at 1967.

In contrast, California provides only petitioner-initiated, discretionary expungement. According to Penal Code §299, if the arrestee is released from custody because he is not charged, his qualifying charges are dismissed pre-adjudication, or he is acquitted, he may apply for discretionary expungement of his DNA sample and profile. However, arrestees who are never charged must await expiration of the statute of limitations before applying for expungement, a

3

minimum three-year delay.  Arrestees charged with felonies must await the dismissal of charges, either pre-trial or post-acquittal. Without legal assistance, the burden is on the exonerated arrestee to file an expungement request in the trial court, notify the prosecutor and the Department of Justice (DOJ), and gather documentation showing eligibility for expungement.  After, 180 days, the court may authorize destruction of the sample and removal of any database profile. The prosecutor can prevent expungement, and the court has discretion to deny the request.  Denial of expungement is a non-appealable, non-reviewable order.

Although §299 specifies that Californians seeking expungement must follow statutory procedures, an "expedited" procedure appears on the DOJ website.[1]  The exonerated arrestee, released from custody, applies directly to the DOJ, filling out a form and providing "sufficient documentation." A DOJ official reviews the request and grants or denies expungement, informing the applicant of the discretionary decision. The applicant may then seek a court hearing, but the court may discretionarily deny expungement, a non-reviewable order.

Both the statutory and "expedited' procedures present substantial obstacles to exonerated arrestees qualifying for expungement. The nearly one-third of arrestees,

---

[1] See DOJ Website <http://oag.ca.gov/bfs/prop69/faqs#> [FAQS: *Getting Expunged or Removed from the CAL-DNA Data Bank* Q.1 (as of Oct.12, 2013).

4

neither charged nor convicted, are not notified of the statutory or expedited procedures when released when from custody.[2] If eligible arrestees somehow locate this information in the Penal Code or on the DOJ website, they will have difficulties navigating the process and gathering documentation without legal assistance.

It is unlikely that California's exonerated arrestees will discover these procedures or attempt to have their DNA expunged. If they do, the state has discretion to keep their DNA sample and retain their profiles in CODIS, even though such retention no longer serves the sole governmental interest identified in *King* – determining whether arrestees held in pre-trial custody committed prior offenses yielding DNA evidence, as relevant to jail and release decisions. *King*, 133 S.Ct. at 1970-77. Those never charged spend no time in pre-trial custody. Those whose charges are dismissed are released from custody. Once out of custody, their reasonable privacy expectations are equivalent to ordinary citizens. *Id.*, at 1978. California's failure to provide automatic, non-discretionary expungement requires re-balancing of the interests identified in *King*, and renders California's arrestee-search provisions unconstitutional.

---

[2] Plaintiff Ento's charges were dismissed soon after arrest. He was never informed that he could seek destruction of his DNA sample or removal of his profile from all databases. See *Haskell*, 669 F.3d at 1066 (Fletcher, J., dissenting).

**B.     California's Statute Contemplates Repeated Suspicionless Comparisons of an Arrestee's DNA Profile With Evidence Profiles in the CODIS Database, Even After Charges Are No Longer Pending.**

Because the Maryland statute at issue in *King* mandates expungement of DNA profiles from defendants not convicted of the charges against them, the Supreme Court did not consider the constitutional implications of the continued retention of exonerated arrestees' profiles in the CODIS database.

DNA profiles in the CODIS database are compared weekly with evidence profiles being constantly uploaded from law enforcement agencies throughout the nation. *Haskell*, 669 F.3d at 1068. An exonerated arrestee who does not successfully navigate the state's expungement process, or who is refused expungement in the unreviewable discretion of the prosecutor or court, faces the prospect of his DNA being trolled every week into the indefinite future for possible matches to crime scene evidence.

*King* found that the state's interest in establishing an arrestee's identity includes learning about his past crimes, in order to ascertain his dangerousness while in pre-trial custody. While that expansive definition of identity may support a one-time comparison of an arrestee's DNA profile with existing database profiles, nothing in *King* suggests that the state has any comparable interest in subjecting a person who is no longer in custody and has been convicted of no crime to repeated,

6

suspicionless examinations to determine if his DNA may be linked to some future offense. *King* does not even purport to justify California's retention of DNA profiles for ongoing periodic comparisons searching for evidence of future criminality.

When the Government physically invades personal property to gather information regarding an individual's constant movements, a search occurs. *United States v. Jones*, 132 S.Ct. 945, 955 (2012) (Sotomayor, J., concurring)  Continually using genetic information seized from the person of an exonerated arrestee to look for evidence of criminal involvement is at least as much a search as the installation and monitoring of the GPS device on the defendant's  vehicle in *Jones*.

**C.     Comparisons Between DNA and Fingerprints, as Means of Identification, Fail to Account for the Greater Danger of Mistaken DNA Matches.**

The *King* majority accepted the oft-repeated argument that retaining DNA profiles in databases is much like the retaining fingerprints.  However, DNA and fingerprints differ significantly in their usefulness in identifying suspects.  Compared to fingerprints, the danger of a false DNA match is not only greater, but less likely to be detected and corrected.

A fingerprint impression is relatively large and unlikely to move from the surface on which it was originally laid. Fingerprints do not form mixtures; if one print is laid over another, they retain their separate identities.

DNA, in contrast, is disconcertingly mobile. Cells containing DNA, from skin, saliva, hair or blood, transfer easily from one surface to another. A profile can be obtained from extraordinarily minute quantities – as few as 15 to 30 skin cells. "Touch DNA: From the Crime Scene to the Crime Laboratory," Forensic Magazine, April 12, 2013 (visited Oct. 23, 2013), <http://www.forensicmag.com/articles/2013/04/touch-dna-crime-scene-crime-laboratory#.UmgmJvlthmc>.

Innocent transfers of DNA to a crime scene or laboratory sample occur in disturbing numbers. William C. Thompson, *Forensic DNA Evidence: The Myth of Infallibility*, in Genetic Explanations: Sense and Nonsense, S. Krimsky and J. Gruber, eds., Harvard University Press, 2013, 227-255. In a recent local case Lukis Anderson spent four months in jail charged with murder after his DNA was found under a murder victim's fingernails. He was released only after his attorneys proved that, at the time of the crime, he was hospitalized for alcohol intoxication. It was later determined that paramedics who responded to the murder scene had taken Anderson to the hospital earlier that day, possibly transferring DNA from his

8

clothing to the murder victim. "Monte Sereno: Prosecutors say murder case remains strong despite exoneration of two defendants," San Jose *Mercury News*, June 27, 2013 (visited Oct. 26, 2013), <http://www.mercurynews.com/ci_23555417/monte-sereno-prosecutors-say-kumra-murder-case-remains>

The ability to test minute amounts of DNA means that crime scene samples may contain fewer than all the alleles needed for a complete profile and/or include multiple persons' DNA. When a mixed sample is prepared for testing, its DNA forms a stew of alleles from all the contributors. The interpretation of partial and mixed profiles is an uncertain process, sensitive to conscious or unconscious interpreter bias. Itiel E. Dror, Greg Hampikian, *Subjectivity and bias in DNA mixture interpretation*, Science and Justice 51 (2011) 204-208.

DNA database profiles present far greater dangers of false matches than fingerprints. False accusations, and even wrongful convictions, may result from cold hits. Plaintiff Haskell, who was released post-arrest without being charged, lives in fear that her DNA may be falsely matched to a crime scene profile, even if she remains completely law abiding. *Harris, supra*, 699 F.3d at 1066 (Fletcher, J., dissenting).

9

### D.  The State's Long-Term Storage of the DNA Sample Implicates Arrestees' Reasonable Expectations of Privacy in Their Genetic Data

The DOJ retains the arrestee's entire DNA sample after the database profile is analyzed and uploaded. *Haskell*, 669 F.3d at 1067. If the trial court or DOJ official decides that the exonerated arrestee's profile should remain in CODIS for weekly comparison with crime scene profiles, the state must also retain his DNA sample for possible re-analysis and match confirmation. *Id.*, at 1052; *United States v. Kriesel,* 720 F.3d 1137, 1143-44 (9th Cir. 2013).

The state's indefinite retention of the exonerated arrestee's DNA sample after his release from custody without being charged or convicted, presents overwhelming privacy concerns."It is the government's possession and control of [the arrestee's] most intimate genetic information that invades his right to privacy." *Kriesel,* 730 F.3d at 1158 (Reinhardt, J., dissenting).

The DNA sample contains the individual's entire genetic code, including information regarding race, familial relationships, sexual orientation, current health, pre-disposition to genetic conditions and diseases, including mental illness and alcoholism, and behavioral traits, including propensity to violence. *United States* v. *Kincade,* 379 F.3d 813, 842, fn. 3 (9th Cir. 2004, en banc) (Gould, J., concurring); *Kriesel*, 720 F.3d at 1149, 1157, 1158-59 (Reinhardt, J., dissenting) Geneticists are

10

researching a "crime gene', purportedly indicating a pre-disposition to criminal behavior. *Kriesel,* 720 F.3d at 1160. Because of the "vast amount of sensitive information that can be mined from a person's DNA", exonerated arrestees have "strong privacy interests" in this information. *United States v. Amerson*, 483 F.3d at 73, 85 (2d Cir. 2007).

State officials use only a portion of the DNA sample, "junk" DNA, to create the offender profile. *Kincade*, 379 F.3d at 818. But exclusive focus on the use of junk DNA ignores the state's on-going possession of and access to the rich, privacy-laden DNA sample. *Kriesel,* 720 F.3d, at 1157-58 (Reinhardt, J., dissenting.).

In California, because of the false promise of expungement, governmental access to stored DNA likely continues long after the exonerated arrestee leaves state custody. *King* did not address this issue, as Maryland mandates DNA expungement for arrestees whose charges are dismissed pre-trial or post-acquittal.

Justice Sotomayor's concurring opinion in *United States v. Jones* concluded that constant police surveillance of the defendant's movements for 28 days, accomplished by attaching a GPS device to his jeep, violated his reasonable expectation of privacy. *Jones,* at 954-57 (Sotomayor, J., concurring). Justice Sotomayor emphasized that continual "GPS monitoring generates a precise,

11

comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious and sexual associations." *Id.* at 955. Even though the government only uses the portion of the GPS data establishing the suspect's involvement in criminality, the tracking device also records "trips of an undisputably private nature." Moreover, the government "could store such records and effectively mine them for information years into the future." *Id*. at 955-56. The government's long-term access to this personal information violates the suspect's privacy interests. *Ibid*. Similarly, California's long-term access to stored DNA samples, which could be mined for more information, implicates exonerated arrestees' reasonable expectations of privacy in their genetic material.

There are statutory restrictions on the state's use of DNA. The DOJ may analyze DNA only for identification purposes, and improper use is subject to criminal penalties. Pen. Code §§295.1(a), 299.5.  However, law enforcement identification could include re-analyzing the stored DNA sample for genetic behavioral traits, including  pre-disposition to mental illness or violence. If "identification" includes determining whether someone has committed prior unsolved crimes yielding DNA evidence, it could include assessing whether he shows a genetic propensity for criminal behavior, justifying preventative detention. *Kriesel,* 720 F.2d at 1157-1160 (Reinhardt, J., dissenting).

12

## **CONCLUSION**

The Supreme Court, in *King,* did not consider the constitutional implications of California's statute allowing indefinite retention of exonerated arrestees' DNA samples and repeated comparison of their database profiles. Amicus submits that indefinite suspicionless comparisons of exonerated arrestees' DNA for possible matches with to future crime scene profiles violates the Fourth Amendment, as does indefinite retention of their DNA samples.

Respectfully submitted,

Dated: October 28, 2013

            /s/ Kathryn Seligman
Kathryn Seligman

Dated: October 28, 2013

            /s/ Linda F. Robertson
Linda F. Robertson

Attorneys for California Attorneys for Criminal Justice

13

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C)(i) and Circuit Rule 32-1, the attached brief of amicus curiae is proportionally spaced, has a typeface of 14 points or more, and contains 2489 words, as determined by the word-count feature of the word processing program.  In compliance with Federal Rules of Appellate Procedure 32(a)(7)(B)(iii), this number includes headings, footnotes, and quotations, but not the caption, table of contents, table of citations, or certificate of counsel.

Dated:  October 28, 2013

_____/s/  Linda F. Robertson_____
Linda F. Robertson

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF service on October 28, 2013.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participant:

Kathryn Seligman, Staff Attorney
First District Appellate Project
730 Harrison Street, Suite 201
San Francisco, CA 94107

_____/s/Linda  F. Robertson_____

Linda F. Robertson